## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **V.** | § | **5:22-CR-00379-JKP** |
| | § | |
| | § | |
| **MARLON LARON SIMIEN** | § | |

## DEFENDANT'S MOTION TO DISMISS

MAUREEN SCOTT FRANCO
Federal Public Defender

_____
/s/ MOLLY LIZBETH ROTH
Assistant Federal Public Defender
Western District of Texas
727 East César E. Chávez Blvd., B–207
San Antonio, Texas 78206–1205
(210) 472-6700
(210) 472-4454 (Fax)
State Bar Number: 24040140

*Attorney for Defendant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................... 1

III.  LEGAL STANDARD ........................................................................................... 2

IV.   ARGUMENT ........................................................................................................ 2

   A.   Section 922(n) Violates the Second Amendment .............................................. 4

      1.   *The Second Amendment's plain text covers § 922(n) conduct.* ...................... 4

      2.   *The Government cannot meet its burden to show that § 922(n)'s restrictions on firearms for those under indictment are "consistent with the Nation's historical tradition of firearm regulation."* .......................................................................................................... 8

   B.   Section 922(o) Violates the Second Amendment ............................................. 13

      1.   *The Second Amendment's plain text covers § 922(o) conduct.* .................... 14

      2.   *The Government cannot meet its burden to show that § 922(o)'s restrictions on "machine guns" are "consistent with the Nation's historical tradition of firearm regulation."* ........................................................................................................ 17

V.    CONCLUSION .................................................................................................... 18

TABLE OF AUTHORITIES

## Cases

*Avitabile v. Beach*, 368 F. Supp. 3d 404 (N.D.N.Y. 2019)............................................................ 16

*Bezet v. United States*, 714 F. App'x 336 (5th Cir. 2017) ........................................................... 15

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) .................................................................. 15, 16

*District of Columbia v. Heller*, 554 U.S. 570 (2008).......................................................... passim

*Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015) ............................................ 16

*Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016) ......................................................................... 3, 15

*Jones v. Bonta*, 34 F.4th 704 (9th Cir. 2022) ............................................................................... 5

*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019) ..................................................................... 6, 7, 11

*Maloney v. Singas*, 351 F. Supp. 3d 222 (E.D.N.Y. 2018)......................................................... 16

*McDonald v. City of Chicago*, 561 U.S. 742 (2010).................................................................. 3, 4

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Fierarms & Explosives*, 700 F.3d 185 (5th Cir. 2012).................................................................................................................... 3

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022)........................ passim

*Potts v. State*, 526 So. 2d 104 (Fla. Dist. Ct. App. 1987) ........................................................... 11

*Rigby v. Jennings*, --- F. Supp. 3d ---, 2022 WL 4448220 (D. Del. Sept. 23, 2022) .................. 14

*Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017) ..................................................... 5

*United States v. Arzberger*, 592 F. Supp. 2d 590 (S.D.N.Y. 2008) ............................................ 13

*United States v. Booker*, 644 F.3d 12 (1st Cir. 2011) ................................................................ 12

*United States v. Flores*, 404 F.3d 320 (5th Cir. 2005)................................................................. 2

*United States v. Hall*, 20 F.3d 1084 (10th Cir. 1994) .................................................................. 2

*United States v. Kays*, No. 22-cr-40, 2022 WL 3718519 (W.D. Okla. Aug. 29, 2022) ........... 7, 12

*United States v. Kennedy*, 593 F. Supp. 2d 1221 (W.D. Wash. 2008) ....................................... 13

*United States v. Laurent*, 861 F. Supp. 2d 71 (E.D.N.Y. 2011) ............................................ passim

*United States v. Love*, No. 20-cr-20327, 2021 WL 5758940 (E.D. Mich. Dec. 3, 2021)........... 6, 8

*United States v. McGinnis*, 956 F.3d 747 (5th Cir. 2020) .................................................... 3

*United States v. Quiroz*, --- F. Supp. 3d ---, 2022 WL 4352482 (W.D. Tex. Sept. 19, 2022)passim

*United States v. Salerno*, 481 U.S 739 (1987) ............................................................... 10

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010)..................................................... 11

*United States v. Torres*, 566 F. Supp. 2d 591 (W.D. Tex. 2008)..................................... 13

*United States v. Valentine*, 401 F.3d 609 (5th Cir. 2005) ............................................... 1

**Statutes**

18 U.S.C. § 3142 ........................................................................................................... 10

18 U.S.C. § 922(n) ................................................................................................... passim

18 U.S.C. § 922(o) ................................................................................................... passim

26 U.S.C. § 5845(b) ....................................................................................................... 14

Haw. Rev. Stat. Ann. § 134-7 ....................................................................................... 11

Ohio Rev. Code Ann. § 2923.13(A) ............................................................................... 11

Wash. Rev. Code § 9.41.040.......................................................................................... 11

**Rules**

FED. R. CRIM. P. 12(b)(1)................................................................................................ 2

FED. R. CRIM. P. 12(b)(3)(B).......................................................................................... 1

FED. R. CRIM. P. 12(d) ................................................................................................... 2

## I.    INTRODUCTION

Defendant Marlon Laron Simien moves, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), to dismiss both counts of the Indictment, which charge violations of 18 U.S.C. § 922(n) and (o). *See* Doc. No. 3. The Court should dismiss the Indictment because § 922(n) and (o) are unconstitutional under the Second Amendment, both facially and as applied to Mr. Simien, under the new standard announced by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). The only court in the Fifth Circuit to consider § 922(n)'s constitutionality since *Bruen* found it facially violates the Second Amendment. *See United States v. Quiroz*, --- F. Supp. 3d ---, 2022 WL 4352482 (W.D. Tex. Sept. 19, 2022). To counsel's knowledge, no court has addressed § 922(o) under the new *Bruen* framework. In support of his motion, Mr. Simien shows the following:

## II.    BACKGROUND

On July 1, 2022, local law enforcement executed an arrest warrant of Mr. Simien for aggravated robbery and purportedly received consent to search his home in San Antonio, Texas.[1] *See* Doc. No. 3 at 2. During that search, officers found and seized a Glock, 19, 9mm pistol and a Palmetto State Armory, PA-15, multi caliber pistol, both of which had been allegedly modified with a "switch" and loaded with a large capacity magazine. *See id*. At the time, Mr. Simien was under felony indictment, based on a 2018 deferred adjudication for a 2017 state aggravated robbery charge.[2] *See id*. On August 30, 2022, a grand jury returned an Indictment, charging Mr. Simien with knowingly possessing at least one machine gun, pursuant to 18 U.S.C. § 922(o), and with

---

[1] This information is based on materials provided by the Government and is used only for the purposes of background. Mr. Simien does not concede the accuracy of any of these allegations.

[2] *See United States v. Valentine*, 401 F.3d 609, 611 (5th Cir. 2005) ("We conclude that a Texas state defendant who is on probation pursuant to a deferred adjudication of a felony charge remains, as a matter of law, under indictment.").

willfully receiving a firearm while under indictment for a crime punishable by more than a year in prison, in violation of 18 U.S.C. § 922(n). Doc. No. 15.

Mr. Simien is set for trial on October 17, 2022. *See* Doc. No. 25.

### III.   LEGAL STANDARD

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." FED. R. CRIM. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see* FED. R. CRIM. P. 12(d) (permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record); *see also*, *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("a pretrial dismissal is essentially a determination that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."). Otherwise, the court would waste resources by allowing a case to proceed to trial and later dismissing it based on the same legal argument and facts presented through a pretrial motion. *See Flores*, 404 F.3d at 325.

### IV.   ARGUMENT

Section 922(n) violates the Second Amendment both facially and as applied to Mr. Simien, because restricting law-abiding citizens who are merely under indictment from obtaining firearms is inconsistent with the historical traditions of the United States. Likewise, § 922(o) violates the Second Amendment because the conduct is protected by the Second Amendment, and machine gun bans are not consistent with any historical tradition of restrictions on "dangerous and unusual weapons."

The Second Amendment to the United States Constitution mandates that a "well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms,

shall not be infringed." U.S. CONST. amend. II. The Supreme Court held in *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008), that the Second Amendment codified an individual right to possess and carry weapons, explaining that the inherent right of self-defense, particularly in the home, is central to the right. *See also McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) (holding "that individual self-defense is the central component of the Second Amendment right.").

Following *Heller*, the Fifth Circuit "adopted a two-step inquiry for analyzing laws that might impact the Second Amendment." *Hollis v. Lynch*, 827 F.3d 436, 446 (5th Cir. 2016). First, courts would ask "whether the conduct at issue falls within the scope of the Second Amendment right." *United States v. McGinnis*, 956 F.3d 747, 754 (5th Cir. 2020) (quoting *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives [NRA]*, 700 F.3d 185, 194 (5th Cir. 2012)). "To make that determination, [courts] look to whether the law harmonizes with the historical traditions associated with the Second Amendment guarantee." *McGinnis*, 956 F.3d at 754. If the conduct is outside the scope of the Second Amendment, then the law is constitutional, otherwise, courts proceed to the second step, to determine whether to apply strict or intermediate scrutiny. *Id*. After *Heller*, when courts found federal firearms restrictions, including § 922(n), constitutional, it was generally under the second step of this framework. *See, e.g., United States v. Laurent*, 861 F. Supp. 2d 71 (E.D.N.Y. 2011).

The Supreme Court has now abrogated that two-step framework. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126-27 (2022). The Court rejected the second step of that framework and reasoned that "[s]tep one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Id*. at 2127. Under the Court's new framework "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id*. at

2126. The government then "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside of the Second Amendment's 'unqualified command.'" *Id*. (citation omitted).

A. **Section 922(n) Violates the Second Amendment**

Under the *Bruen* framework, § 922(n) violates the Second Amendment both facially and as applied to Mr. Simien. The statute permits the denial of Second Amendment rights for law-abiding citizens simply because they were accused of a crime. Section 922(n) clearly affects conduct within the scope of the Second Amendment right and the restriction is inconsistent with the Nation's historical tradition of firearms regulation. Since *Bruen*, only one court in the Fifth Circuit has addressed § 922(n)'s constitutionality and it determined that the statute violates the Second Amendment. *See United States v. Quiroz*, --- F. Supp. 3d ---, 2022 WL 4352482 (W.D. Tex. Sept. 19, 2022).

1. *The Second Amendment's plain text covers § 922(n) conduct.*

Under the new framework in *Bruen*, courts are tasked with determining, first, whether the Second Amendment's plain text covers an individual's conduct. 142 S. Ct. at 2129-30. In such cases, the Constitution presumptively protects the conduct. *Id.* The burden then shifts to the Government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*.

The conduct prohibited by § 922(n)—i.e., receipt of a firearm—is clearly covered by the plain text of the Second Amendment. It impacts the core Second Amendment right to possess a firearm for self-defense. *See McDonald*, 561 U.S. at 767; *see also generally Bruen*, 142 S. Ct.

2111.[3] Receipt of a firearm is both directly protected by the Second Amendment and indirectly protected as a necessary precursor to possession of a firearm. *See Jones v. Bonta*, 34 F.4th 704, 716 (9th Cir.), *opinion vacated on reh'g*, 47 F.4th 1124 (9th Cir. 2022) ("Similarly, without the right to obtain arms, the right to keep and bear arms would be meaningless . . .. For this reason, the right to keep and bear arms includes the right to purchase them."); *Laurent*, 861 F. Supp. 2d at 85 ("Unless the defendant already possesses a firearm prior to his indictment, § 922(n) does deny him the ability to keep and bear arms for the purpose of self-defense in his home."); *cf. Teixeira v. County of Alameda*, 873 F.3d 670, 682 (9th Cir. 2017) ("Commerce in firearms is a necessary prerequisite to keeping and possessing arms for self-defense . . . ."). Every court to consider this question, both before and after *Bruen* has agreed that § 922(n) conduct is protected by the Second Amendment. *See, e.g., Quiroz*, 2022 WL 4352482, at *3-4; *Laurent*, 861 F. Supp. 2d at 102; *United*

---

[3] Legislative history illustrates that the passage of § 922(n) reflected a now outdated conception of the Second Amendment, and clearly implicates those rights post-*Heller*. Congress, in passing the modern version of § 922, recognized some potential Second Amendment concerns, but those concerns were assuaged by assurances that the Second Amendment does not confer an individual right to bear arms, a position since rejected by the Supreme Court in *Heller*. The Senate Report explains:

> A number of witnesses at the hearings have raised the question of the constitutionality of Federal firearms legislation, because it would interfere with individual rights guaranteed by the second amendment of the Constitution . . . [court] decisions hold that the second amendment, unlike the first, was not adopted with the individual rights in mind, but is a prohibition upon Federal action which would interfere with the organization of militia by the states of the Union. . . . It is sometimes contended that, aside from the second amendment, there is a natural right to bear arms, or a right stemming from a State constitution. However, it is well settled that there is nothing inherent in any such right that renders it absolute. The overwhelming majority of State cases hold that the legislature may prescribe regulations and limitations with regard to the carrying of weapons. It is clear, for example, that a State law prohibiting the carrying of revolvers without a license, or forbidding possession of concealed weapons, does not violate either the Federal or that State's constitution. And it is clear that no body of citizens other than the organized State militia, or other military organization provided for by law, may be said to have a constitutional right to bear arms.

1968 U.S.C.C.A.N. 2112, 2169. Congress seemingly acknowledged that the provisions would infringe on an individual's right to bear arms but determined that no such individual right exists. That determination has since been proven incorrect.

*States v. Love*, No. 20-cr-20327, 2021 WL 5758940, at *3 (E.D. Mich. Dec. 3, 2021) ("Based on *Heller* and its progeny, the Court finds that § 922(n) does impose a substantial burden on Mr. Love's Second Amendment's right.").

The statute is not limited by the type of firearm, the purpose for which the firearm might be used, or the space in which the firearm may be carried. Moreover, the restriction can persist for years, as it did in Mr. Simien's case; he had been under indictment or deferred adjudication for the same offense for nearly five years at the time of the present charges. *See Laurent*, 861 F. Supp. 2d at 102 ("This burden may last for a year or more before the initial indictment is adjudicated."). Nor has the government tendered evidence that Mr. Simien already owned any firearms, so the restriction on receipt amounted to a half-decade long complete restriction on firearm possession.[4]

The fact that § 922(n) only places a restriction on those *under indictment* as opposed to all individuals is irrelevant to this stage of the *Bruen* framework. A person's status is not relevant to whether the Second Amendment protects the conduct, but to whether historical traditions support restricting the right. In *Heller*, the Supreme Court rejected the theory that the "people" protected by the Second Amendment were limited to a subset—i.e., those in a militia. *See Heller*, 554 U.S. at 579-81, 592-600. The Court explained that when the Constitution refers to "'the people,' the term unambiguously refers to all members of the political community, not an unspecified subset," and that there is a "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Heller*, 554 U.S. at 580-81. The question has been expanded upon by one sitting Justice on the Supreme Court, who explained that a person's status—e.g., felon—is properly considered in the question of the historical tradition, rather than the existence of the right. *See Kanter v. Barr*, 919 F.3d 437, 451–52 (7th Cir. 2019) (Barrett, J., dissenting), *abrogated by*

---

[4] Several of these facts speak to Mr. Simien's as-applied challenge specifically.

*Bruen*, 142 S. Ct. 2111. Then-Judge Barrett reasoned that, under the language of *Heller* itself, the word "people" refers to "all Americans," meaning that even those who can be lawfully restricted, are not "categorically excluded from our national community." *Kanter*, 919 F.3d at 453. The "question is whether the government has the power to disable the exercise of a right that they otherwise possess, rather than whether they possess the right at all." *Id.* The court in *Quiroz* found the same in striking down § 922(n). *See Quiroz*, 2022 WL 4352482, at *3 ("whether the Government can restrict that specific conduct for a specific group would fall under *Bruen*'s second step: the historical justification for that regulation.").[5] The alternative would be a largely unworkable and illogical test, which required courts to determine first whether conduct is protected relative to a person's status, and ultimately reduced the entirety of the Second Amendment analysis to this initial question.[6]

In this case, the plain text of the Second Amendment applies to the conduct, regardless of whether the Court considers the "indictment" issue at this stage or the next stage of the *Bruen* framework. Even if the Court were to understand that whether a person's conduct was protected by the Second Amendment turned on a consideration of his or her status, or whether he or she was "law-abiding," courts have routinely explained that those merely under indictment are "law-abiding" citizens for these purposes. *See, e.g., Laurent*, 861 F. Supp. at 102 ("Thus, for the purposes of construing the statute, a defendant under indictment is a 'law-abiding citizen' who

---

[5] One other district court has addressed § 922(n) since *Bruen*, and found that a person's status is not properly considered at this stage of the *Bruen* framework. *See United States v. Kays*, No. 22-cr-40, 2022 WL 3718519, at *3 (W.D. Okla. Aug. 29, 2022) ("This argument ignores the Supreme Court's emphasis on an individual's conduct, rather than status, to decide if Second Amendment protection exists. This Court declines to read into *Bruen* a qualification that Second Amendment rights belong only to individuals who have not been accused of violating any laws."). The court in *Kays* ultimately upheld § 922(n), based on an erroneous application of *Bruen*, as explained elsewhere in this Motion.

[6] The Supreme Court did not address this issue in *Bruen*, because the case involved a licensing provision rather than a complete restriction on firearm possession or receipt for those of a certain status.

remains eligible for Second Amendment protection."); *Love*, 2021 WL 5758940, at *3 ("The purchase of a firearm by a presumably innocent individual falls within the Second Amendment right as historically understood.").

Therefore, the plain text of the Second Amendment covers the conduct at issue in § 922(n), so the law is presumptively unconstitutional. *See Bruen*, 142 S. Ct. at 2126.

 2. *The Government cannot meet its burden to show that § 922(n)'s restrictions on firearms for those under indictment are "consistent with the Nation's historical tradition of firearm regulation."*

Under the *Bruen* framework, when the plain text of the Second Amendment covers the conduct at issue, the burden shifts to the Government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *See Bruen*, 142 S. Ct. at 2130. The Government cannot meet that burden.

To meet its burden, the Government must provide historical examples and support for the constitutionality of § 922(n), and the Court is "entitled to decide a case based on the historical record compiled by the parties," rather than conducting its own historical surveys. *See id.* at 2130 n.6.[7] The Government cannot rely on a select few "outlier" regulations, but must show "a tradition of broadly prohibiting" conduct in the manner of § 922(n). *See id.* at 2138, 2156.

The Supreme Court has explained that "when it comes to interpreting the Constitution, not all history is created equal. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Bruen*, 142 S. Ct. at 2136 (quoting *Heller*, 554 U.S. at 634-35). "The Second Amendment was adopted in 1791; the Fourteenth in 1868. Historical evidence that long predates either date may not illuminate the scope of the right if linguistic or

---

[7] *See also Bruen*, 142 S. Ct. at 2150 ("Of course, we are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden.").

8

legal conventions change in the intervening years." *Id.*[8] Similarly, the Supreme Court explained that "we must also guard against giving post enactment history more weight than it can rightly bear." *Bruen*, 142 S. Ct. at 2136. The Court expressed skepticism about reliance on laws passed long after the passage of the particular Constitutional Amendment and explained "to the extent later history contradicts what the text says, the text controls." *Id.* at 2137.

The Court also explained that the requisite similarity between the challenged law and historical examples in part depends on whether the problem addressed by the law has historically existed or is uniquely modern. *See Bruen*, 142 S. Ct. at 2131–33. When "a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* at 2131. The total handgun ban in *Heller* and public-carry restriction in *Bruen* involved this type of straightforward historical inquiry. *Id.* The *Bruen* Court did not expressly define "distinctly similar," but the historical analysis therein illustrates that the term means that statutes are nearly identical or meaningfully the same, not simply analogous or "relevantly similar."[9] On the other hand, "cases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced

---

[8] The Fourteenth Amendment was specifically implicated in *Bruen* because it is the Fourteenth Amendment that imposes the Second Amendment's pronouncement on a state regulation or law. The Supreme Court left open the question of whether the proper time-period to consider, particularly for a federal statute, is 1791, the passage of the Second Amendment, or 1868, the passage of the Fourteenth Amendment. *See Bruen*, 142 S. Ct. at 2137–38. The failure to determine the issue was specifically identified by Justice Barrett as well in her concurrence. *Id.* at 2163 (Barrett, J., concurring). Even in *Bruen*, the Court acknowledged that 19th century evidence was secondary to that from the nation's founding, *see id.* at 2137, and its value is likely even more limited when addressing a federal statute.

[9] The only historical example identified in *Bruen* as being sufficiently analogous to the challenged New York public carry statute, was a Nineteenth century Texas statute that forbade anyone from "carrying on or about his person any pistol unless he has reasonable grounds for fearing an unlawful attack on his person." *Bruen*, 142 S. Ct. at 2153 (quoting 1871 Tex. Gen. Laws § 1). The statute is effectively identical to the New York statute which required applicants to demonstrate "proper-cause" to obtain a public-carry license.

approach." *Id*. at 2132. "When confronting such present-day firearm regulations, this historical inquiry that courts must conduct will often involve reasoning by analogy . . .." *Id*. Whether an historical regulation is a proper analogue for a uniquely modern regulation turns on whether they are "relevantly similar," based in part on how and why the regulations burden the Second Amendment right. *Id*. at 2132–33.

Here, as in *Heller* and *Bruen*, historical examples of regulations proffered by the Government must be "*distinctly* similar" to § 922(n) because the restriction does not address "unprecedented societal concerns or dramatic technological changes[.]" *See Bruen*, 142 S. Ct. at 2132–33. The restriction here is a ban on firearm receipt by those under indictment, a process that predates the Constitution itself. Whether the problem addressed is the specific danger posed by indictees or by people suspected of being dangerous more broadly, both are general societal problems that have existed at least since the founding.

The Government cannot meet its burden to show "distinctly similar" founding era laws demonstrating an historical tradition of restricting firearms for those under indictment. *See Quiroz*, 2022 WL 4352482, at *4-8. "Indictment has historically had a limited effect on an individual's constitutional rights." *Laurent*, 861 F. Supp. 2d at 91. As explained in *Laurent*, the impact on an indicted person's rights has generally been limited to detention or certain pre-trial conditions only after a judicial determination that such conditions are necessary. *Id*. at 90-93 (citing *United States v. Salerno*, 481 U.S 739, 764 (1987); 18 U.S.C. § 3142)). Conversely, the history of barring indicted individuals from receiving firearms is limited and relatively recent. Congress first passed a law prohibiting transporting firearms for those under indictment for a crime of violence, in 1938. *See* Federal Firearms Act of 1938, 75 Cong. Ch. 850, § 2(e), 52 Stat. 1250, 1251 (repealed). It was not until 1961, that Congress expanded the prohibition to include all individuals under indictment.

10

*See* Act of Oct. 3, 1961, Pub. L. No. 87–342, 75 Stat. 757 (repealed). The statute was again clarified in 1968, to include indictments in state and federal court, but only those felonies punishable by more than one year in prison. *See* Gun Control Act of 1968, Pub. L. 90–618, 82 Stat. 1213 (codified at 18 U.S.C. § 921 *et seq.*). The Government, of course, cannot rely on the passage of § 922(n) *itself* to establish an historical tradition back to the enactment of the Second Amendment,[10] and there is no evidence of a prior tradition of disarming indictees.

Even if § 922(n) were a uniquely modern regulation, such that the Court could expand its historical analysis to include merely "relevantly similar" analogues, there is limited support in the Nation's history. Counsel anticipates that the Government will argue that § 922(n) is sufficiently analogous to laws prohibiting felons or similar persons from having firearms. The position is flawed. The *Heller* Court declined at that time to strike down "prohibitions on the possession of firearms by felons and the mentally ill . . ." 554 U.S. at 626-27. But this language is dicta and does not establish an historical tradition of disarming even felons or other individuals deemed to be dangerous. *See United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (cautioning against over-reading *Heller*'s holding). In fact, courts have recognized there is no support for the disarmament of even felons from the founding era. *See Kanter*, 919 F.3d at 454 (Barrett, J., dissenting) (noting scholars have not been able to identify any founding-era laws disarming all

---

[10] First, a statute cannot serve as its own historical analogue. Moreover, the Supreme Court specifically declined to consider <u>any</u> Twentieth century evidence offered by the respondents in *Bruen*, noting it "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *See id*. at 2154 n.28. Similarly, the handful of state laws addressing firearm receipt or possession by indictees were enacted largely in the 20th century and tend to be less restrictive than § 922(n). *See, e.g.,* Ohio Rev. Code Ann. § 2923.13(A)(2), (3) (passed in 1972 and limited to those under indictment for "offense of violence" or certain other enumerated offenses); Wash. Rev. Code § 9.41.040(2)(a)(iv) (added in 1996 and requiring those on bond pending trial for serious offenses to surrender firearms); Haw. Rev. Stat. Ann. § 134-7 (passed in 1988); *see also Potts v. State*, 526 So. 2d 104, 104 (Fla. Dist. Ct. App. 1987), *approved*, 526 So. 2d 63 (Fla. 1988) (finding statute restricting use and concealed carry of firearms by those under indictment violated state constitution).

felons); *United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011) (explaining modern statutes dispossessing felons of firearms bear "little resemblance to laws in effect at the time the Second Amendment was ratified[.]"). More importantly, though, felons are meaningfully different from indictees, such that any such restrictions would not be even "relevantly similar." *See Bruen*, 142 S. Ct. at 2132-33.

Nor can the Government rely on similar generalized public safety justifications or policies against arming "unvirtuous" or "dangerous" citizens to uphold § 922(n). The *Bruen* Court explained that the "government may not simply posit that the regulation promotes an important interest." *Bruen*, 142 S. Ct. at 2126. Moreover, a person indicted of a crime, particularly in the absence of an individualized determination about his or her dangerousness or a limitation to crimes of violence, does not pose the same inherent threat to public safety as those historically identified as "unvirtuous" or dangerous.[11] And, more importantly, specifically restricting firearm access for those under indictment is not consistent with the country's historical traditions of firearm regulation.

The only court in this Circuit to address § 922(n) since *Bruen* conducted an extensive analysis and found no historical tradition to support § 922(n). *See Quiroz*, 2022 WL 4352482, at *4-8. The court in *Quiroz* could find no statutes like § 922(n) before its passage in the 20th century, and rejected other historical analogues proffered by the Government, as insufficiently historical or "similar" to § 922(n) to satisfy *Bruen*. *See id* at *4-8. The court also explained that the limited

---

[11] For similar reasons, this Court should not look to historical surety statutes as analogues. The *Bruen* Court addressed a series of mid-19th century statutes requiring certain dangerous individuals to post bond before carrying weapons in public. 142 S. Ct. at 2148. In *Kays*, the district court found that such statutes provided sufficient historical support for the constitutionality of § 922(n). 2022 WL 3718519, at *4-5. That court, however, ignored the specific finding in *Bruen* that these statutes appear not to have been enforced except pretextually against black defendants, as well as the fact that such statutes were less restrictive than § 922(n) and in fact serve to prove that legislatures addressed the same problem in different ways historically. *See Quiroz*, 2022 WL 4352482, at *7-8.

procedural protections of grand jury proceedings and "historical misappropriation of law to pretextually and unlawfully disarm unfavored groups," provide additional cause for skepticism of § 922(n)'s constitutionality. *Id*. at *10-12.

Outside of the context of § 922(n), several district courts, including in this District, have struck down other per se restrictions on the rights of indicted individuals. *See, e.g., United States v. Torres*, 566 F. Supp. 2d 591 (W.D. Tex. 2008) (Cardone, J.) (finding the Adam Walsh Amendments, which mandated release conditions including on firearm possession for those charged with sex offenses, violated the Due Process Clause of the Fifth Amendment); *United States v. Arzberger*, 592 F. Supp. 2d 590, 602 (S.D.N.Y. 2008); *cf. United States v. Kennedy*, 593 F. Supp. 2d 1221, 1231 n.4 (W.D. Wash. 2008) (noting concern with government's position that defendants could be prohibited from possessing firearms simply because they were charged with an offense). *Arzberger*, for example, addressed the provision of the Adam Walsh Amendments forbidding possession of firearms for those charged under certain statutes. 592 F. Supp. 2d at 601-03. It explained "although the Supreme Court has indicated that this privilege may be withdrawn from some groups of persons such as convicted felons, there is no basis for categorically depriving persons who are merely accused of certain crimes of the right to legal possession of a firearm." *Id*. at 602.

Therefore, the Government cannot show that § 922(n) is consistent with the Nation's historical tradition of firearm regulation, and the Court should dismiss Count Two of the Indictment because it violates the Second Amendment facially and as applied to Mr. Simien.

## B. <u>Section 922(o) Violates the Second Amendment</u>

Count One charges Mr. Simien with a violation of 18 U.S.C. § 922(o). Section 922(o), which bans machine gun possession, also violates the Second Amendment both facially and as applied after *Bruen*, because it criminalizes possession of firearms "in common use" for the

purpose of self-defense, and the statute is inconsistent with the Nation's historical tradition of firearms restrictions.

    *1.   The Second Amendment's plain text covers § 922(o) conduct.*

    Section 922(o) provides, in relevant part, that "it shall be unlawful for any person to transfer or possess a machine gun." A machine gun is "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). Clearly, possession or transfer of a firearm is protected conduct, but under *Bruen*, the Court must determine whether a *machine gun* is exempted from the protections of the Second Amendment.

    This presents a similar issue to that noted in the § 922(n) context—which step of the *Bruen* framework properly addresses whether a specific type of firearm can be restricted. The *Heller* Court strongly suggests that, in most cases, this is properly a question of the government's power to restrict a right rather than whether the firearm is among the "arms" protected by the Second Amendment. The Court explained: "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582 (cleaned up). Conversely, the Court identified an "historical tradition of prohibiting the carrying of 'dangerous and unusual' weapons." *Id.* at 627. The *Heller* Court's reference to an "historical tradition" of prohibiting these types of firearms indicates that the question of firearm type is more properly addressed in the next step of *Bruen*, the historical tradition. That all firearms may be included among the "arms" protected by the Second Amendment, and much like one's status, the question of the types of firearms that can be restricted is a question of the historical power to restrict them. Other courts applying *Bruen* in similar contexts have found the same. *See, e.g., Rigby v. Jennings*, --- F. Supp. 3d ---, 2022 WL 4448220, at *7 n.13 (D. Del. Sept. 23, 2022) (citation omitted) (in the context of a ban on untraceable and

other firearms, explaining "[i]f a plaintiff challenges the government's prohibition, it is on the government first to prove the banned arm is dangerous and unusual, and if not that it is not commonly possessed, or not commonly possessed by law-abiding citizens, or not commonly possessed for lawful purposes or militia readiness.").

Even if the Court considers the question at this step, machine guns are among the "arms" protected by the plain text of the Second Amendment.[12] The *Heller* Court explained that the term "arms" does not apply "only [to] those arms in existence in the 18th century." 554 U.S. at 582. "Just as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* (cleaned up). "Thus, even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense." *Bruen*, 142 S. Ct. at 2132. "The Second Amendment protects the possession and use of weapons that are 'in common use at the time.'" *Id.* at 2128 (citing *Heller*, 554 U.S. at 627). On the other hand, there exists an "historical tradition of prohibiting the carrying of 'dangerous and unusual' weapons." *Heller*, 554 U.S. at 627. The question of whether a weapon is "dangerous and unusual" is conjunctive—i.e., it must be both dangerous *and* unusual. *See Caetano v. Massachusetts*, 577 U.S. 411, 417 (2016) (Alito, J., concurring).

Machine guns are unquestionably in common use today for the purposes of self-defense. As of May 2021, there were more than 740,000 machineguns *lawfully* possessed in the United

---

[12] The Fifth Circuit has held that § 922(o) only regulates firearms that fall outside of the scope of the Second Amendment, but in light of the change in law under *Bruen*, the Court should revisit the issue. *See Bezet v. United States*, 714 F. App'x 336, 340-41 (5th Cir. 2017); *see also Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016).

States and registered with the Bureau of Alcohol, Tobacco, Firearms and Explosives.[13] This is almost quadruple the number of lawfully possessed stun guns that Justice Alito found sufficient to characterize that weapon as "widely owned and accepted as a legitimate means of self-defense." *Caetano*, 577 U.S. at 420 (Alito, J., concurring).[14] This figure also only includes lawfully owned firearms that were grandfathered in from before the passage of the statute in 1986. *See* 18 U.S.C. § 922(o)(2)(B); Pub. L. No. 99-308, sec. 102 (May 19, 1986). The actual number of machine guns currently owned by Americans is undoubtedly significantly higher. Even unlawfully owned machine guns count for the purposes of assessing whether it is in "common use." *Cf. Friedman v. City of Highland Park*, 784 F.3d 406, 409 (7th Cir. 2015) (explaining "it would be absurd to say that the reason why a particular weapon can be banned is that there is a statute banning it, so that it isn't commonly owned.").

While machine guns, like all firearms, are assuredly dangerous under the ordinary use of that term, they do not fit the legal conception of "dangerous and unusual." As Justice Alito explained, "the relative dangerousness of a weapon is irrelevant when the weapon belongs to a class of arms commonly used for lawful purposes." *Caetano*, 577 U.S. at 418 (Alito, J., concurring). The "arms" identified as protected by *Heller* include "any thing that a man wears for his defence, or takes into this hands, or useth in wrath to case at or strike another," and virtually every weapon covered by that definition would qualify as dangerous. *See id.* (citing *Heller*, 554

---

[13] U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, Firearms Commerce in the United States: Annual Statistical Update 2021, 15–16 (2021).

[14] *See also Maloney v. Singas*, 351 F. Supp. 3d 222, 237–38 (E.D.N.Y. 2018) (finding evidence that at least 64,890 nunchaku were sold on the retail market in the United States between 1995 and 2018 sufficient to show the weapon was "in common use"); *Avitabile v. Beach*, 368 F. Supp. 3d 404, 411–12 (N.D.N.Y. 2019) (finding evidence that at least 300,000 tasers were owned by private citizens in the United States sufficient to show the weapon was "in common use").

U.S. at 581). "If *Heller* tells us anything, it is that firearms cannot be categorically prohibited just because they are dangerous." *Caetano*, 577 U.S. at 418 (Alito, J., concurring).

Moreover, the *Heller* Court identified a "tradition of prohibiting the *carrying* of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 627 (emphasis added). The *Bruen* Court similarly explained that this historical class of statutes did not ban "the carrying of any class of firearms, they merely codified the existing common-law offense of bearing arms to terrorize the people . . ." *Bruen*, 142 S. Ct. at 2143. But § 922(o) prohibits *possession* of a machine gun. Indeed, the firearms in question in this case were not found while they were carried in public by Mr. Simien or used to terrorize anybody. They were seized from his home. Even if the Court understands *Heller* as excluding the carrying of dangerous and unusual weapons from the Second Amendment's plain text, that does not apply to § 922(o).

Therefore, the plain text of the Second Amendment covers the conduct at issue in § 922(o), so the law is presumptively unconstitutional. *See Bruen*, 142 S. Ct. at 2126.

2. *The Government cannot meet its burden to show that § 922(o)'s restrictions on "machine guns" are "consistent with the Nation's historical tradition of firearm regulation."*

Because the plain text of the Second Amendment protects the § 922(o) conduct, the Government bears the burden to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *See Bruen*, 142 S. Ct. at 2130. The Government cannot meet that burden.

As in the § 922(n) analysis, *Bruen* requires the Government to conduct a thorough historical analysis, which finds a broad tradition of similar prohibitions from the founding era. *See generally Bruen*, 142 S. Ct. 2111. Unlike the § 922(n) analysis, it is likely appropriate to rely on the "relevantly similar" as opposed to the "distinctly similar" standard, because regulation of machine guns implicate "unprecedented societal concerns or dramatic technological changes." 142 S. Ct.

17

at 2132. The *Bruen* Court explained that the "relevantly similar" standard is comparable to the use "of history to determine which modern 'arms' are protected by the Second Amendment." *Id*. But, the *Bruen* Court called into question the prudence of relying on historical restrictions on "dangerous and unusual weapons," which it explained related less to the class of firearms and more to the use of such arms to terrorize others. *Bruen*, 142 S. Ct. at 2111. Moreover, as described above, machine guns are not sufficiently "unusual" such that any historical restriction would serve as a sufficient analogue. The Government cannot overcome its burden without providing detailed briefing of "relevantly similar" restrictions to § 922(o) from the founding.

## V.     CONCLUSION

For the foregoing reasons, Mr. Simien requests a hearing on this dismissal request so that he can fully present his arguments. A hearing would aid the Court in addressing the novel legal issues presented in this dismissal motion. Finally, Mr. Simien asks that the Court dismiss both counts of the Indictment.

Respectfully Submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender

_____
/s/ MOLLY LIZBETH ROTH
Assistant Federal Public Defender
Western District of Texas
727 East César E. Chávez Blvd., B–207
San Antonio, Texas 78206–1205
(210) 472-6700
(210) 472-4454 (Fax)
State Bar Number: 24040140

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of October, 2022, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system which will send notification of such filing to the following:

Brian M. Nowinski
Assistant United States Attorney
United States Attorney's Office
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216

_____
/s/ MOLLY LIZBETH ROTH
*Attorney For Defendant*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **V.** | § | **5:22-CR-00379-JKP** |
| | § | |
| | § | |
| **MARLON LARON SIMIEN** | § | |

## <u>ORDER</u>

On this day, the Court considered Defendant's Motion to Dismiss the Indictment, and the Court is of the opinion that the motion should be GRANTED. Accordingly, it is hereby:

ORDERED that the Indictment in this cause is DISMISSED.

SIGNED this ____ day of _____, 20__.


_____
JASON K. PULLIAM
UNITED STATES DISTRICT JUDGE