UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**UNITED STATES OF AMERICA,**

  *Plaintiff*,

**v.**                                                                     Case No.  SA-22-CR-00379-JKP

**MARLON LARON SIMIEN,**

  *Defendant*.

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Marlon Laron Simien's motion, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), to dismiss both counts of the Indictment, which charge violations of 18 U.S.C. § 922(n) and (o). ECF No. 27. Simien argues the Court should dismiss the Indictment because § 922(n) and (o) are unconstitutional under the Second Amendment, both facially and as applied to Simien, under the standard articulated by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). For the reasons discussed herein, the Court disagrees and, therefore, **DENIES** Simien's motion.

### BACKGROUND

On July 1, 2022, local law enforcement executed an arrest warrant of Simien for aggravated robbery and searched his home in San Antonio, Texas. *See* ECF No. 3 at 2. During that search, officers found and seized a Glock pistol and a Palmetto State Armory pistol, both of which had been allegedly modified with a "switch" and loaded with a large capacity magazine. *See id*. At the time, Simien was under felony indictment, based on a 2018 deferred adjudication for a 2017 state aggravated robbery charge. *See id*. On August 30, 2022, a grand jury returned an

Indictment, charging Simien with knowingly possessing at least one machine gun, pursuant to 18 U.S.C. § 922(o), and willfully receiving a firearm while under indictment for a crime punishable by more than a year in prison, in violation of 18 U.S.C. § 922(n). ECF No. 15. Trial is scheduled for March 13, 2023. ECF No. 41.

Simien moves to dismiss the Indictment, arguing § 922(n)'s prohibition on indictees obtaining firearms is inconsistent with historical firearms restrictions and, therefore, violates the Second Amendment under the *Bruen* decision. Likewise, Simien argues prohibiting possession of machine guns under § 922(o) violates the Second Amendment because it is not consistent with historical restrictions on dangerous and unusual weapons. The government avers, under the *Bruen* framework, §§ 922(n) and (o) are constitutional, both facially and as applied to Simien. For the reasons discussed herein, the Court agrees.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see* Fed. R. Crim. P. 12(d) (permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record); *see also, United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("a pretrial dismissal is essentially a determination that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."). Otherwise, the court would waste resources by allowing a case to proceed to trial and later dismissing it based on the same legal argument and facts presented through a pretrial motion. *See Flores*, 404 F.3d at 325.

## ANALYSIS

The Second Amendment to the Constitution states "a well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court held the Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. 570, 635 (2008). In so doing, the *Heller* Court rejected earlier interpretations of the Second Amendment which limited its application to militia members, finding the Second Amendment guarantees an individual's right to keep and bear arms, unconnected to militia service. *Id*. at 592. The Court reached its conclusion by employing a textual analysis, informed by history. *Id*. at 576–577, 592. Two years later, in *McDonald v. Chicago*, the Supreme Court held the Second Amendment applies to the states through the Fourteenth Amendment. 561 U.S. 742, 767 (2010). Most recently, *Bruen* struck down a New York law requiring applicants to demonstrate a "special need" for a concealed carry license, finding it to be an impermissible restriction on the Second Amendment's protection of an "individual's right to carry a handgun for self-defense outside the home." 142 S. Ct. at 2122.

Following *Heller*, the Fifth Circuit, like other circuits, applied a two-step inquiry for assessing the constitutionality of firearms restrictions. First, courts would determine whether the regulation fell within the scope of the Second Amendment right, looking to the text and historical tradition to inform their analysis. *United States v. McGinnis*, 956 F.3d 747, 754 (5th Cir. 2020).[1] If the regulation was outside the scope of the Second Amendment, then the law was constitutional. *Id*. If it was inside the scope of the Second Amendment, courts would apply means-end scrutiny to assess its constitutionality. *Id*. In *Bruen*, the Supreme Court declared the

---

[1] A Fifth Circuit panel recently abrogated *McGinnis's* finding that § 922(g)(8) is constitutional. *See US v. Rahimi*, --- F.4th ---, No. 21-11001, 2023 WL 1459240 (5th Cir. Feb. 2, 2023). It is cited here only to describe the analysis courts applied before *Bruen*.

two-step inquiry to be "one step too many." 142 S. Ct. at 2127. The *Bruen* Court indicated its earlier rulings do not support applying means-end scrutiny, but only "a test rooted in the Second Amendment's text, as informed by history." *Id*.

In the Fifth Circuit, recognition that the Second Amendment protects an individual's right to keep and bear arms predates *Heller*. In 2001, nearly seven years before *Heller*, the Fifth Circuit in *United States v. Emerson* held the Second Amendment protects an individual's right to privately possess and bear firearms. 270 F.3d 203, 260 (5th Cir. 2001).[2] The *Emerson* opinion says the Second Amendment right is not unlimited, but rather subject to certain restrictions consistent with the right "as historically understood in this country." *Id*. at 261. Specifically, it says, "it is clear that felons, infants and those of unsound mind may be prohibited from possessing firearms." *Id*. The *Emerson* opinion describes the right to possess firearms as a common law right that preceded the Constitution, which the Framers understood to exclude certain groups. *Id*. at 226 n. 21.

The Supreme Court in *Heller* arrived at the same conclusion. 554 U.S. at 626–27. Courts and commentators "[f]rom Blackstone through the 19th-century," according to *Heller*, agree "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id*. at 626. The *Heller* Court goes on to say, although it has not undertaken a thorough analysis of the Second Amendment's scope, "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on commercial sale of arms." *Id*. at 626–27. In a footnote, the *Heller* Court says these "presumptively lawful" measures

---

[2] The *Rahimi* court abrogated *Emerson's* holding finding § 922(g)(8) constitutional but its description of the individual right conferred by the Second Amendment, which was repeated by the Supreme Court in *Heller*, remains intact. *See Rahimi*, 2023 WL 1459240.

are an illustrative, not exhaustive list. *Id*. at 627 n. 26. The *Heller* Court further identifies "another important limitation on the right to keep and bear arms" as the type of firearm protected. *Id*. at 627. Only those firearms "in common use" at the time of ratification are protected, and "dangerous and unusual weapons" are prohibited.[3] *Id*.

Subsequent Supreme Court opinions do not disturb *Heller*'s pronouncement about these presumptively lawful restrictions. Two years after *Heller*, in *McDonald*, the Supreme Court repeated its assurances that, despite the respondents' "doomsday proclamations," the Court had no intention of casting doubt on "longstanding" regulatory measures. *McDonald*, 561 U.S. at 786 (citing *Heller*, 554 U.S. at 626–27.). In *Bruen*, the Supreme Court characterizes its holding as "in keeping with *Heller*" and repeatedly refers to the Second Amendment right afforded "law-abiding citizens." 142 S. Ct. at 2126. Furthermore, in their concurring opinions to the *Bruen* decision, Justices Alito and Kavanaugh affirm the *Heller* Court's embrace of presumptively lawful restrictions. *Id*. at 2157 (Alito, J., concurring); *id*. at 2162 (Kavanaugh, J., concurring).

What the *Bruen* decision adds is an emphasis on the Second Amendment's text and history. Specifically, under *Bruen*, courts considering a constitutional challenge to a firearms regulation must first consider whether it invokes the Second Amendment. 142 S. Ct. at 2133. When the Second Amendment's plain text covers the challenged regulation, the Government bears the burden of identifying a "well-established and representative historical analogue" to its regulation. *Id*. Furthermore, "when it comes to interpreting the Constitution, not all history is created equal. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Id*. at 2136. Therefore, to carry its burden, the Government must point to "historical precedent from before, during, and even after the founding [that] evinces a

---

[3] Simien urges the Court to disregard these presumptions because they are dicta; however, courts "are generally bound by Supreme Court dicta, especially when it is recent and detailed," as is the case here. *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016).

comparable tradition of regulation." *Id*. at 2131–32 (internal quotation marks omitted). However, the Government need not identify a "historical twin"—a historical analogue is sufficient, and "analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check." *Id*. at 2133. "[T]he Constitution can, and must apply to circumstances beyond those the Founders specifically anticipated." *Id*. at 2132. The core question is whether the challenged law and the proffered analogue are "relevantly similar." *Id*. Two metrics for this analysis are "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id*. at 2133.

In the wake of the *Bruen* decision, criminal defendants across the country are challenging the constitutionality of federal firearms offenses codified in 18 U.S.C. § 922. Challengers argue the law's recent vintage makes it suspect under *Bruen*'s text-and-history analysis. Indeed, the Federal Firearms Act was first enacted in 1938, making it relatively modern in comparison to the founding-era historical analysis required by *Bruen*. 142 S. Ct. at 2131–32.

Results in post-*Bruen* § 922 challenges vary. To date, two Fifth Circuit panels have ruled on such challenges. In *U.S. v. Avila*, in a per curiam opinion, a three-judge panel rejected a *Bruen* challenge to one of the provisions at issue in the case at bar—§ 922(n), which criminalizes receipt of a firearm by a person under felony indictment. No. 22-50088, 2022 WL 17832287 at *2 (5th Cir. Dec. 21, 2022). Because the defendant did not challenge the law's constitutionality at trial, the court applied plain error review. *Id*. at 1. The panel affirmed the district court, finding a lack of binding precedent made the defendant's challenge fail on plain error review. *Id*. Most recently, a Fifth Circuit panel considered the constitutionality of § 922(g)(8), which criminalizes possession of a firearm by a person subject to a domestic violence protective order, on de novo review. *US v. Rahimi*, --- F.4th ---, No. 21-11001, 2023 WL 1459240 (5th Cir. Feb. 2, 2023).

Applying *Bruen*, the court found § 922(g)(8) to be inconsistent with the Nation's historical tradition of firearm regulation and, therefore, unconstitutional. *Id*. at *10.

In the Western District of Texas, courts have found at least two § 922 offenses to be unconstitutional under *Bruen*. Judge David Counts and Judge Alan Albright dismissed § 922(n) indictments (related to felony indictees), and Judge Counts dismissed a § 922(g)(8) indictment (related to a person under a domestic violence protective order).[4] *United States v. Quiroz*, No. PE:22-CR-00104-DC, --- F.Supp.3d ---, 2022 WL 4352482 (W.D. Tex. Sept. 19, 2022); *United States v. Hicks*, No. W:21-CR-00060-ADA, --- F.Supp.3d ---, 2023 WL 164170 (W.D. Tex. Jan. 9, 2023); *United States v. Perez-Gallan*, No. PE:22-CR-00427-DC, --- F.Supp.3d ---, 2022 WL 16858516 (W.D. Tex. Nov. 10, 2022). The undersigned judge has rejected two *Bruen* challenges, to § 922(g)(1), which prohibits felons from possessing a firearm, and § 922(a)(6), which proscribes making a false statement during a firearm sale. *United States v. Grinage*, No. SA:21-CR-00399-JKP, 2022 WL 17420390 (W.D. Tex. Dec. 5, 2022); *United States v. Soto*, No. SA:22-CR-302-JKP, 2023 WL 1087886 (W.D. Tex. Jan. 27, 2023). Judge Counts and Judge Frank Montalvo similarly rejected § 922(g)(1) (felon in possession) challenges, consistent with district courts across the country that have done the same. *United States v. Collette*, No. MO:22-CR-00141-DC, --- F.Supp.3d ---, 2022 WL 4476790 (W.D. Tex. Sept. 25, 2022); *United States v. Charles*, No. MO:22-CR-00154-DC, --- F.Supp.3d ---, 2022 WL 4913900 (W.D. Tex. Oct. 3, 2022); *United States v. Banuelos*, No. EP:22-CR-00903-FM, 2022 WL 17752205 (W.D. Tex. Nov. 10, 2022); *see also Grinage*, 2022 WL 17420390, at *8 n. 1 (collecting cases).

---

[4] The Government's appeals of these opinions are currently pending in the Fifth Circuit. *See* No. 22-50834; No. 23-50030; No. 22-51019.

In this case, Simien challenges the constitutionality of federal laws criminalizing receipt of a firearm by a felony indictee under § 922(n) and making possession of a machine gun unlawful under § 922(o). Each of these challenges is considered, in light of *Bruen*, below.

**I.      Section 922(n)**

Simien is charged with violating 18 U.S.C. § 922(n), which provides:

> It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Officers searching Simien's home found two pistols which they maintain he recently received. At the time of the search, Simien was on a 2018 deferred adjudication for a 2017 state aggravated robbery charge. A Texas state defendant who is on probation pursuant to a deferred adjudication of a felony charge remains, as a matter of law, under indictment. *See United States v. Valentine*, 401 F.3d 609, 611 (5th Cir. 2005). Based on this evidence, a grand jury returned an indictment charging Simien with willfully receiving a firearm while under indictment for a crime punishable by more than a year in prison, in violation of § 922(n).

Simien moves for the Court to dismiss the indictment, arguing § 922(n) is unconstitutional both facially and as applied to him.

**A.      Section 922(n) As Applied**

When a challenger raises both facial and as-applied challenges, courts first determine the validity of the statute as-applied because "statutes should be construed whenever possible so as to uphold their constitutionality." *Hollis v. Lynch*, 121 F. Supp. 3d 617, 629–30 (N.D. Tex. 2015) (quoting *United States v. Vuitch*, 402 U.S. 62, 70 (1971); citing *Renne v. Geary*, 501 U.S. 312, 324 (1991)). To establish an as-applied challenge, the defendant must show the application of the

challenged statute to the facts of his case would violate his constitutional rights. *United States v. Perez*, 43 F.4th 437, 443 (5th Cir. 2022). In this case, Simien argues § 922(n) is unconstitutional as applied in his case because he was under indictment or deferred adjudication for nearly five years when he was charged with a § 922(n) offense.[5] He argues such a long-term restriction impermissibly infringes on his Second Amendment rights. *See e.g. United States v. Laurent*, 861 F. Supp. 2d 71 at 102 (E.D.N.Y. 2011).

The question before the Court, therefore, is whether Simien's prolonged status as a felony indictee, based on his deferred adjudication, impermissibly impairs his right to keep and bear arms. As an initial matter, the Court notes that deferred adjudication is distinguishable from conviction insofar as it does not require a finding of guilt. It does, however, require some evidence of guilt. Under Texas law, a "judge may, after receiving a plea of guilty or nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings without entering an adjudication of guilt and place the defendant on deferred adjudication community supervision." Tex. Code Crim. Pro. art. 42A.101. Deferred adjudication pauses the proceedings, allowing the defendant an opportunity to complete a probationary period in compliance with certain conditions, after which, if he succeeds, charges will be dropped.

Certainly, a person on deferred adjudication could be "under indictment" for the purposes of § 922(n) for several years, as was the case with Simien. However, a person on deferred adjudication accepts certain restrictions on his liberty in exchange for potentially avoiding conviction. To the extent he later finds those restrictions require modification, the proper remedy is to seek relief from the judge who imposed them. *See* Tex. Code Crim. Pro. art. 42A.051. The constitutionality of a particular restriction—such as receipt of a firearm—is unrelated to how

---

[5] Simien also argues § 922(n) is unconstitutional as applied to him because he is charged with purchasing a firearm, but not shipping or transporting a firearm, which are also criminalized by § 922(n). Because this argument does not raise a constitutional question, the Court does not address it.

long the restriction is imposed. The restriction under § 922(n) is either constitutional or unconstitutional on its face. The Court, therefore, finds Simien fails to raise an actionable as-applied challenge to § 922(n).

### B. Section 922(n) Facial Challenge

The Court now turns to Simien's facial challenge. A facial challenge is an attack on a statute itself as opposed to a particular application. Such challenges are "the most difficult … to mount successfully," *United States v. Salerno*, 481 U.S. 739, 745 (1987). In bringing a facial challenge, the movant must establish the statute "is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). "Facial challenges are disfavored for several reasons." *Id*. at 450. Such challenges "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Id*. (citing *Ashwander v. TVA*, 297 U.S. 288, 346–347 (1936) (Brandeis, J., concurring)). Courts must bear in mind "a ruling of unconstitutionality frustrates the intent of the elected representatives of the people." *Id*. (citing *Ayotte v. Planned Parenthood of Northern New Eng.*, 546 U.S. 320, 329 (2006)). The judicial power vested in courts by Article III does not include the power to veto statutes—and that is by design. *NetChoice, LLC v. Paxton*, 49 F.4th 439, 448 (2022). The Framers considered giving courts the power to veto statutes and decided against it. *Id*. As a result, when courts find a statute unconstitutional, they cannot void it, but they can decline to enforce it in a "particular case or controversy" and enjoin executive officials from enforcing it more broadly. *Borden v. United States*, 141 S.Ct. 1817, 1835–36 (Thomas, J., concurring). In

other words, "[c]ourts have no authority to strike down statutory text" and "a facial challenge, if successful, has the same effect as nullifying a statute." *Id*.

The Court finds relatively few cases to inform its analysis of § 922(n)'s constitutionality. The Fifth Circuit considered a *Bruen* challenge to § 922(n) in *Avila*; however, because it did so on plain error review, its analysis was brief. The *Avila* court noted that, due to the lack of binding precedent, finding in the defendant's favor would require a "survey [of] the historical pedigree of similar laws" and "adopt[ion] of the defendant's interpretation of that history"—a process that would be appropriate on de novo, not plain error review. *Avila*, 2022 WL 17832287, at *2. The *Avila* court further noted that finding § 922(n) unconstitutional would require "disagreeing with several other federal courts that confronted this issue post-*Bruen*." *Id*. (citing *United States v. Perez-Garcia*, 2022 WL 4351967, at *7 (S.D. Cal. Sept. 18, 2022); and *United States v. Kays*, 2022 WL 3718519, at *5 (W.D. Okla. Aug. 29, 2022)). Notably, the *Avila* court did not cite Judge Counts' contrary *Quiroz* decision finding § 922(n) unconstitutional under *Bruen*.[6]

The only other Fifth Circuit decision providing insight into how the circuit will apply *Bruen* to § 922 challenges is the *Rahimi* panel decision finding unconstitutional § 922(g)(8)'s prohibition on possession of firearms by people subject to domestic violence protective orders. *Rahimi*, 2023 WL 1459240, at *2. The *Rahimi* court concluded *Bruen* represents an intervening change in law which renders § 922(g)(8) unconstitutional, overturning pre-*Bruen* Fifth Circuit decisions to the contrary. *Id*. at *2. The *Rahimi* court rejected the Government's argument that people subject to domestic violence protective orders are not the type of "law-abiding citizens" protected by the Second Amendment. *Id*. at *4. Finding that such people are covered by the Second Amendment's plain text, the *Rahimi* court went on to assess the government's proffered historical analogues to § 922(g)(8), ultimately finding they failed to meet the test set forth in

---

[6] Judge Albright's *Hicks* decision finding § 922(n) unconstitutional under *Bruen* came out after the *Avila* decision.

*Bruen*. *Id*. at *7. This Court's task is to apply *Bruen*, as elucidated by the reasoning in *Avila* and *Rahimi*, to the case at bar.

The Court first addresses the predicate question of whether Simien, a felony indictee, is the type of person afforded Second Amendment protection. As the *Rahimi* court notes, "[t]here is some debate on this issue." *Id*. at *3. On the one hand, courts interpret *Heller*'s declaration that "the people" in the Second Amendment "unambiguously refers to all members of the political community, not an unspecified subset" to mean no group of people is excluded. *Id*. (quoting *Heller*, 554 U.S. at 580). Other courts, including this Court, read this passage only as *Heller*'s pronouncement that the Second Amendment confers an individual, not collective right, noting the *Heller* Court goes on to say "[of] course the right was not unlimited." *See Grinage*, 2022 WL 17420390, at *4–5 (quoting *Heller*, 554 U.S. at 595). The latter view holds that *Heller* excluded from Second Amendment review certain "longstanding" and "presumptively lawful" restrictions based on the person, place, sale, or weapon. *Heller*, 554 U.S. at 626–27. Because the *Heller* Court by its own admission did not undertake an exhaustive analysis of the Second Amendment's scope, courts are now tasked with determining which "longstanding" measures are "presumptively lawful." *Id*. The emphasis in *Heller* and *Bruen* on a "law-abiding" citizen's Second Amendment rights, for example, may signal an intent to preserve longstanding restrictions on non-law-abiding people exercising Second Amendment rights.

The *Rahimi* court criticizes this approach for its lack of a limiting principle, arguing that, taken to the extreme, excluding non-law-abiding people as a group could be interpreted to include speeders, political nonconformists, or people who do not recycle or drive an electric vehicle. 2023 WL 1459240, at *4. *Heller* did, however, include limitations insofar as it listed categories of presumptively lawful restrictions and referred to them as "longstanding." This

Court questions whether the Federal Firearms Act of 1938, as an 85-year-old law, might be the type of "longstanding" measure the *Heller* decision described as presumptively lawful. However, absent clear authority supporting that position, the Court finds it prudent to conduct the *Bruen* text-and-history analysis.

If Simien is the type of person protected by the Second Amendment's plain text, the next question is whether his conduct, receipt of a firearm, is similarly protected. In justifying § 922(n)'s prohibition on receipt of a firearm by a felony indictee, the Government attempts to distinguish "receipt" from "possession." By limiting its prohibition to "receipt" of a firearm, the Government argues, § 922(n) reaches only a limited class of risky citizens who obtain new guns while facing felony charges. Although the statute does not, for example, prohibit continued possession of a firearm the indictee previously owned, an indictee's Second Amendment rights are affected by § 922(n) because receipt is a necessary predicate to possession. Therefore, the Court finds the Government's argument regarding receipt unconvincing. This view is consistent with other courts that have considered the question. *See e.g. Quiroz*, 2022 WL 4352482, at *3–4, *Hicks*, 2023 WL 164170, at *2–3, *Kays*, 2022 WL 3718510, at *2.

If § 922(n) invokes the Second Amendment's plain text, the next question is whether the Government has met its burden to show the statute is sufficiently grounded in our nation's historical tradition of firearms regulation. The Government offers a sufficient, though imperfect, historical analogue to § 922(n) in the form of surety statutes discussed in *Bruen*. To be sure, the two opinions the Fifth Circuit cited in *Avila* both found § 922(n) constitutional based on its similarity to surety statutes. *See Perez-Garcia*, 2022 WL 4351967, at *7; and *Kays*, 2022 WL 3718519, at *5. In contrast, two Western District Courts were unconvinced, finding surety statutes insufficient bases upon which to uphold § 922(n). *See Quiroz*, 2022 WL 4352482, at *7–

8, *Hicks*, 2023 WL 164170, at *7. To meet *Bruen's* mandate, the Government need not identify a historical twin, only a "relevantly similar" historical analogue. 142 S. Ct. at 2133. This Court finds, consistent with the courts cited in *Avila*, surety statutes are relevantly similar to § 922(n).

English and early American surety laws support categorically restricting the gun rights of those accused but not convicted of wrongdoing. In England, a "surety of the peace followed an accusation by someone that an individual would likely violate the law in the future." *Young v. Hawaii*, 992 F.3d 765, 791 n.12 (9th Cir. 2021) (en banc), vacated, 2022 WL 2347578 (U.S. June 30, 2022); *see also Wrenn v. District of Columbia*, 864 F.3d 650, 661 (D.C. Cir. 2017) (explaining that English surety laws required a person "reasonably accused of posing a threat" "to post a bond to be used to cover any damage he might do" by carrying a gun). As Blackstone explained, "wherever any private man hath just cause to fear, that another will burn his house, or do him a corporal injury, by killing, imprisoning, or beating him; ... he may demand surety of the peace against such person." 4 William Blackstone, Commentaries on the Laws of England 252 (1769). And if the person against whom the accusation was made did not "find such sureties, as the justice [of the peace] in his discretion s[hould] require, he [could] immediately be committed till he [did]." *Id*. The surety was "intended merely for prevention, without any crime actually committed by the party, but arising only from a probable suspicion, that some crime [wa]s intended or likely to happen." *Id*. at 249.

This common-law surety practice carried over to the American colonies. "In the mid-19th century, many jurisdictions [in the United States] began adopting surety statutes that required certain individuals to post bond before carrying weapons in public." *Bruen*, 142 S. Ct. at 2148; *see also Heller*, 554 U.S. at 605. Massachusetts passed the first such law in 1836. *Bruen*, 142 S. Ct. at 2148. Under the Massachusetts law, if any person was armed and could not show a special

need for self-defense, he could "on complaint of any person having reasonable cause to fear an injury, or breach of the peace, be required to find sureties for keeping the peace." Mass. Rev. Stat. ch. 134, § 16 (1836). "Between 1838 and 1871, nine other jurisdictions adopted variants of the Massachusetts law." *Bruen*, 142 S. Ct. at 2148.

These laws offer an imperfect, but relevantly similar analogue to § 922(n). An indictee cannot overcome § 922(n)'s restriction by posting a bond; however, § 922(n) has more procedural safeguards than the surety laws. Under the latter, a person could be required to post a bond based on another's oath alone—and sometimes did not even require the oath to establish a completed crime. 4 Blackstone 252. Section § 922(n) typically requires a grand jury-finding of probable cause that a crime was committed. Finally, like § 922(n)'s restriction, which lasts only while a person is "under indictment," the surety laws' restrictions lasted only for a specified time. *See* 4 Blackstone 249–50. For these reasons, the Court finds the Government met its burden to show § 922(n) is consistent with historical traditions of firearms restrictions in the form of surety laws.

## II.    Section 922(o)

Simien is charged with violating 18 U.S.C. § 922(o), which provides in relevant part: "…it shall be unlawful for any person to transfer or possess a machinegun." For the purposes of the statute:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

15

26 U.S.C. § 5845(b). Simien is charged with illegally possessing two firearms which had been modified with a "switch" and loaded with a large capacity magazine. The modifications constitute "parts designed and intended, for use in converting a weapon into a machinegun" and, therefore, fit the definition of machineguns under the statute.

Simien moves for the Court to dismiss the indictment, arguing § 922(o) is unconstitutional both facially and as applied to him.

### A.     Section 922(o) As Applied

The Court again begins with Simien's as-applied challenge. To prevail, he must show the application of § 922(o) to the facts of his case would violate his constitutional rights. *United States v. Perez*, 43 F.4th 437, 443 (5th Cir. 2022). Simien argues the firearms at issue in his case are distinguishable from machineguns in general because they are standard guns outfitted by devices making them fully automatic. The definition of a "machinegun," under the statute, includes "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." 26 U.S.C. § 5845(b). Simien appears to argue that, because the firearms in his case were converted to machineguns but not originally machineguns, the statute is unconstitutional as applied to him. That is a distinction without a difference. Whether the firearms in Simien's case are protected by the Second Amendment will turn on whether machineguns are protected by the Second Amendment, regardless of whether they are converted. The Court, therefore, finds Simien fails to raise a cognizable as-applied challenge to § 922(o).

### B.     Section 922(o) Facial Challenge

The Court now moves to Simien's facial challenge, for which he must show § 922(o) "is unconstitutional in all of its applications." *Wash. State Grange*, 552 U.S. at 449 (2008).

Assuming the conduct of possessing a machinegun is protected by the plain text of the Second Amendment, the weapon itself is not protected, based on U.S. Supreme Court and Fifth Circuit precedent. *Heller* recognized a "historical tradition of prohibiting the carrying of dangerous and unusual weapons." 554 U.S. at 627. This longstanding tradition grew from English common law, under which "the offense of riding or going armed, with dangerous or unusual weapons, [was] a crime." 4 W. Blackstone, Commentaries on the Laws of England 148–49 (1769). Simien does not dispute that "dangerous and unusual weapons" are not afforded Second Amendment protection; however, he argues machineguns are not dangerous and unusual. This argument is foreclosed by binding Fifth Circuit and Supreme Court authority.

In *United States v. Miller*, the Supreme Court rejected a Second Amendment challenge to the indictment of two men for transporting an unregistered short-barreled shotgun in interstate commerce, in violation of the National Firearms Act. 307 U.S. 174, 178 (1939). In *Heller*, the Supreme Court explained that *Miller* stands for the proposition "that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizen for lawful purposes, such as short-barreled shotguns." 554 U.S. at 625. *Heller* explicitly rejected a proposed reading of *Miller* that would render the National Firearms Act's restrictions on machineguns as unconstitutional. *Id.* at 624.

The Fifth Circuit in *Hollis* held machineguns "do not receive Second Amendment protection" because they "are dangerous and unusual and therefore not in common use." *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016). Today, machineguns remain dangerous and unusual. Machineguns, which have been likened to pipe bombs and hand-grenades, are within the category of weapons of "quasi-suspect character" that are inherently dangerous. *Id.* at 448 (quoting *Staples v. United States*, 511 U.S. 600, 611–12 (1994)). They are also unusual. In

*Hollis*, the Court held that the number of civilian-owned machineguns, about 176,000, fell far short of the amount necessary to be considered in common use. *Id*. at 449–50. Circumstances have not meaningfully changed since then. Although the number of civilian-owned machineguns has increased to about 740,000, this amount—which is less than .2% of total firearms in the United States—remains too insignificant for machineguns to be considered in common use. *See* ECF No. 31 (Government's Response Brief) at 8–9.

Based on this evidence, the Court finds machineguns are within the category of "dangerous and unusual" weapons that do not receive Second Amendment protection and Simien's facial challenge to § 922(o), therefore, fails.

## CONCLUSION

The Court finds § 922(n) and (o) are constitutional under the Second Amendment, under the standard articulated in the Supreme Court's *Bruen* decision, both facially and as applied to Simien. The Court, therefore, **DENIES** Simien's Rule 12(b)(3)(B) motion to dismiss the Indictment. ECF No. 27.

It is so ORDERED.
SIGNED this 10th day of February, 2023.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE