UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| V. § | SA-22-CR-00379-JKP |
| § | |
| MARLON LARON SIMIEN § | |

**DEFENDANT'S MOTION TO RECONSIDER ORDER
DENYING DEFENDANT'S MOTION TO DISMISS**

Defendant Marlon Laron Simien requests that this Court reconsider its denial of his Motion to Dismiss. *See* ECF No. 42.[1] Simien argues that the Order is inconsistent with the Supreme Court's Second Amendment framework from *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

### I.   LEGAL STANDARD

Motions to reconsider in criminal cases are judicial creations not derived from a statute or rule. *See United States v. Brewer*, 60 F.3d 1142, 1143 (5th Cir. 1995). While motions to reconsider do not appear in the Federal Rules of Criminal Procedure, the Fifth Circuit has held that such motions are a "recognized legitimate procedural device." *United States v. Lewis*, 921 F.2d 563, 564 (5th Cir. 1991). Motions for reconsideration in criminal cases "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *United States v. Salinas*, 665 F. Supp. 2d 717, 720 (W.D. Tex. 2009) (citation omitted).[2] Even absent a motion to reconsider, however, "so long as a district court has jurisdiction over a case, it

---

[1] Mr. Simien addresses specifically his request to dismiss the 18 U.S.C. § 922(n) count, but this motion should not be understood as a waiver of any challenge to or appeal on his prior challenge to § 922(o).

[2] Timeliness constraints for motions to reconsider apply only to orders affecting final judgments, and such motions must be filed within 10 days of the entry of judgment. *See United States v. Lewis*, 921 F.2d 563, 564 (5th Cir. 1991). There is no final judgment yet in this case, so there is no such concern.

1

retains power to reconsider, rescind, or modify an interlocutory order," i.e., one that is not a final judgment. *United States v. Botello*, 196 F.3d 1258, at *2 (5th Cir. 1999) (unpublished).

## II. ARGUMENT

The Court's Order denied Mr. Simien's motion to dismiss, specifically on the question of whether 18 U.S.C. § 922(n) violates the Second Amendment. The Court's reasoning is inconsistent with the framework established in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, particularly as articulated by the Fifth Circuit in *United States v. Rahimi*, __ F.4th __, No. 21-11001, 2023 WL 2317796 (5th Cir. Mar. 2, 2023).[3] The Court should reconsider its Order and grant Mr. Simien's Motion to Dismiss, for the reasons stated below and in Mr. Simien's prior briefing.

*First*, the Order misstated the standard for facial challenges brought under the Second Amendment. *See* ECF No. 42 at 10. Citing to *United States v. Salerno*, 481 U.S 739 (1987) and *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008), the Court explained that to succeed on a facial challenge, "the movant must establish the statute 'is unconstitutional in all of its applications.'" ECF No. 42 at 10. The Fifth Circuit, however, recently rejected reliance on *Salerno* for facial Second Amendment challenges. *See Rahimi*, 2023 WL 2317796, at *5-6. Rather, the court explained that *Bruen* itself provided the standard for Second Amendment facial challenges. *Id*. "[I]f a statute is inconsistent with the Second Amendment's text and historical understanding, then it falls under any circumstances." *Id.* at *6. Facial challenges consider only whether the text of the challenged statute is inconsistent with the Second Amendment's text and

---

[3] Since this Court's Order, the Fifth Circuit superseded its opinion in *Rahimi*. Mr. Simien suggests that this Court's Order on reconsideration remove the citation to the withdrawn opinion in *Rahimi*. *See* ECF No. 42 at 3 n.1 (citing *United States v. Rahimi*, 59 F.4th 163 (5th Cir. Feb. 2, 2023)) and cite the opinion issued by the Fifth Circuit on March 2, 2023, which withdrew and superseded the prior opinion. *See Rahimi*, 2023 WL 2317796.

historical understanding. *Id.*; *see also Freedom Path, Inc. v. Internal Revenue Serv.*, 913 F.3d 503, 508 (5th Cir. 2019) ("A facial challenge to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual." (cleaned up)).

*Second*, Mr. Simien asserts the Order twice erroneously cited to *United States v. Perez-Garcia*, __ F. Supp. 3d __, No. 3:22-cr-1581, 2022 WL 4351967 (S.D. Cal. Sept. 18, 2022), as an opinion upholding § 922(n). *See* ECF No. 42 at 11, 13. *Perez-Garcia*, however, did not address § 922(n), but rather the power to disarm a person on pretrial release by order pursuant to the Bail Reform Act. There is a considerable distinction between disarming a person after a specific court finding and criminalizing their receipt of a firearm merely based on an indictment. Indeed, this was the subject of significant discussion by one panel of the Fifth Circuit during a recent oral argument. *See United States v. Quiroz*, No. 22-50834, No. 69 (5th Cir. Feb. 16, 2023), available at https://www.ca5.uscourts.gov/OralArgRecordings/22/22-50834_2-8-2023.mp3.

Moreover, *Perez-Garcia* is a magistrate court decision, which was adopted in part but reversed on key issues by the district court, particularly those for which the Government has cited the opinion in 922(n) cases. *See United States v. Perez-Garcia*, No. 3:22-cr-1581-GPC, 2022 WL 17477918 at *3–4 (S.D. Cal. Dec. 6, 2022) (rejecting the position that indictees are not "law-abiding," calling the magistrate's finding "problematic," and referring to the presumption of innocence as "one of the most basic tenets of our legal system …").

*Third*, the Court determined that § 922(n) was consistent with the Nation's historical tradition of firearm regulation, based on surety laws. *See* ECF No. 42 at 14-15. Relying on 19th century laws, including one in Massachusetts, the Court reasoned that the English surety practice carried into the United States. *See id*. The Order, however, ignored that *Bruen* itself found "little evidence that authorities ever enforced surety laws." 142 S. Ct. at 2149. Addressing the precise

3

laws cited in this Court's opinion, the *Bruen* Court remarked there was limited evidence of enforcement, and those cases involved pretextual enforcement against black defendants. *Id*. *Bruen* described this as "surely too slender a reed on which to hang a historical tradition …" *Id*. The *Bruen* Court did not merely find the laws insufficiently *similar* to the New York public carry law at issue there; it found the laws to be insufficiently *historical* to be considered a part of the Nation's historical tradition of firearm regulation. These 19th century surety laws suffer from the added infirmity of not being from the Founding. When "it comes to interpreting the Constitution, not all history is created equal. 'Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*.'" *Id.* at 2136 (quoting *Heller*, 554 U.S. at 634–35). While 19th century laws are of arguable import when addressing a state law, as in *Bruen*, because the Fourteenth Amendment incorporated the Second Amendment against the states in 1868, such historical evidence is of less significance when addressing a federal statute.

Moreover, the Court's determination that these laws are "relevantly similar" to § 922(n) is at odds with *Rahimi*. The *Rahimi* court determined that the "surety laws" cited by the Government in this case, were not sufficiently similar to § 922(g)(8), despite finding that they similarly "were meant to protect an identified person … from the risk of harm posed by another identified individual …" 2023 WL 2317796, at *11. These surety laws are plainly even less analogous to § 922(n) than to § 922(g)(8), so, under *Rahimi*'s reasoning, are insufficient evidence in Mr. Simien's case as well. This was seemingly acknowledged during oral argument before one panel of the Fifth Circuit recently. *See United States v. Quiroz*, No. 22-50834, No. 69 (5th Cir. Feb. 16, 2023), available at https://www.ca5.uscourts.gov/OralArgRecordings/22/22-50834_2-8-2023.mp3. Surety laws are based on an individualized threat of actual danger and involved a process, much like the typical hearing underlying § 922(g)(8), to address that concern. *See Rahimi*, 2023 WL

4

2317796, at *10-11. Section 922(n), conversely, subjects any person indicted for any felony, regardless of whether it involved violence, to criminal prosecution for receiving a firearm. So while surety laws are similar to § 922(g)(8) on the *why* metric, they are not similar to § 922(n). *See Bruen*, 142 S. Ct. at 2133 (explaining historical analogies are compared based on *how* and *why* they impact a person's Second Amendment rights). And *how* surety laws burden the Second Amendment right is fundamentally different from § 922(n), like § 922(g)(8), because one could make a surety payment to continue carrying firearms.

*Fourth*, while the Order relied solely on surety laws for historical evidence, there is affirmative evidence that those under indictment not only retained their firearms but were required to keep firearms. The Second Amendment codified an individual right, but the prefatory clause clarifies that the purpose of that right was to "prevent elimination of the militia." *Heller*, 554 U.S. at 599. Given this "stated purpose, logic demands that if an individual was (or is) a member of the 'militia,' the Second Amendment's protections extend at least to those who constitute the militia." *Firearms Pol'y Coal., Inc. v. McCraw*, __F. Supp. 3d __, No. 4:21-cv-1245-MTP, 2022 WL 3656996, at *5 (N.D. Tex. Aug. 25, 2022). "That is, although the Second Amendment is not limited to only those in the militia, it must protect at least the pool of individuals from whom the militia would be drawn." *Id.* Even felons were part of the militia pool, and certainly those merely accused of crimes were as well. Just one year after the ratification of the Second Amendment, Congress provided that "each and every free able-bodied white male citizen of the respective states, resident therein, who is or shall be of the age of eighteen years, and under the age of forty five years … shall severally and respectively be enrolled in the militia." Act of May 8, 1792, § 1, 1 Stat. 271. The Act further required that "every citizen so enrolled … shall, within six months thereafter, provide himself with a good musket or firelock, a sufficient bayonet and belt," and other related

items like ammunition. *Id*. And, while the Act "exempted" certain class of people, it did not exclude indictees or felons. *Id.* § 2, 1 Stat. 272.[4] This historical evidence suggests that indictees on pretrial release were not only permitted to bear arms but were required to as part of militia service.

Judge Ho's concurrence in *Rahimi* is also informative on § 922(n). *See Rahimi*, 2023 WL 2317796, at *12-17.[5] Judge Ho clarified that the Founders believed in protecting citizens against violence, and that the criminal process addressed those protections. *Id*. Insofar as the Founders were concerned with disarming violent criminals, that concern was addressed by arrest, detention, and incarceration. *Id*. Those who are detained or incarcerated have been determined to be dangerous or a flight risk and are necessarily disarmed. They can be subjected to various restrictions on their liberty and have a reduced need to bear arms for self-defense while detained. Those who are released pretrial, like Mr. Simien, are fundamentally different. They have not been historically disarmed, even though pretrial release was available for most felons at the time of the founding. *See* Judiciary Act of 1789, 1 Stat. 73, § 33 (describing that bail was generally available, including for those accused of capital crimes if ordered by a federal judge); *see also Kanter v. Barr*, 919 F.3d 437, 459 (7th Cir. 2019) (Barrett, J., dissenting) (citations omitted).[6]

---

[4] Similar contemporaneous state militia statutes also failed to exempt felons. *See* Laws of the State of Delaware, ch. XXXVI, §§ 1, 2, 4, at 1134-36 (1797); Public Statute Laws of the State of Connecticut, Title CXII, ch. I, §§ 1, 10, at 499-500, 505-06 (1808); Herty, Digest of the Laws of Maryland, "Militia," §§ 7, 15, 19, 20, at 367-70 (1799); Wright & Potter, 7 Acts and Laws of the Commonwealth of Massachusetts, 1780-1805, ch. 14, at 381-82, 389-90 (1898); Constitution and Laws of the State of New-Hampshire, Act of Dec. 28, 1792, at 251–52, 256 (1805); Thomas Greenleaf, Laws of the State of New-York, Act of April 4, 1786, at 227–28, 232–33 (1792); Mitchell, Statutes at Large of Pennsylvania, Act of March 20, 1780, §§ III, XXI, at 146, 154 (1700–1809); Marbury, Digest of the Laws of the State of Georgia, Act of December 24, 1792, §§ 9-10, at 350 (1802).

[5] Elsewhere, the majority opinion in *Rahimi* notes that it expresses no opinion on the constitutionality of § 922(n). *See Rahimi*, 2023 WL 2317796, at *5 n.6.

[6] Insofar as the Government would rely on dicta from *Heller* about presumptively lawful "longstanding prohibitions" on firearm possession by felons, the language does not eliminate the need to conduct a *Bruen* analysis. *See Heller*, 554 U.S. at 626. The language is unquestionably dicta. *See United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc). Moreover, the Supreme Court acknowledged that it had not

The Government cannot show that § 922(n) is consistent with the Nation's historical tradition of firearm regulation, and the Court should find that the statute violates the Second Amendment. The prior Order denying Mr. Simien's Motion to Dismiss includes errors of law and fact, and requires reconsideration.

### III. CONCLUSION

For the foregoing reasons and those stated in his Motion to Dismiss and other briefing, Mr. Simien requests that the Court reconsider its prior Order, dismiss the Indictment, and order any other relief it deems necessary.

Respectfully Submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender

/s/ MOLLY LIZBETH ROTH
Assistant Federal Public Defender
Western District of Texas
727 East César E. Chávez Blvd., B–207
San Antonio, Texas 78206–1205
(210) 472-6700
(210) 472-4454 (Fax)
State Bar Number: 24040140

*Attorney for Defendant*

---

undergone an exhaustive historical analysis of that issue. *Heller*, 554 U.S. at 626. If there is historical support for these "longstanding prohibitions," it is the Government's burden to provide it to the Court.

## CERTIFICATE OF SERVICE

   I hereby certify that on the 14th day of March, 2023, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system which will send notification of such filing to the following:

Assistant United States Attorney Brian M. Nowinski
United States Attorney's Office
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216

        /s/ MOLLY LIZBETH ROTH
        *Attorney For Defendant*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| V. | § § | SA-22-CR-00379-JKP |
| MARLON LARON SIMIEN | § § | |

**ORDER**

On this date came on to be considered the Defendant's Motion to Reconsider, and the Court having considered the premises, is of the opinion that the same should be and is hereby GRANTED.

It is therefore ORDERED that the instant Motion be GRANTED.

It is further ORDERED that the Indictment be DISMISSED.

SO ORDERED on this the _____ day of _____, 2023.

_____
JASON K. PULLIAM
UNITED STATES DISTRICT JUDGE